Good morning, Your Honor. Your Honors, may it please the Court, Counsel Michael Filippovich and Andrew Kennedy on behalf of Mr. Kirk SaintCalle. Mr. Kirk SaintCalle under the Constitution effectively is standing in the shoes of the juror who has peremptory challenged Ms. Anna Tolson, who is referred to as juror number 34 in these proceedings. I would like to attempt to reserve three minutes, Your Honor. The question presented by this case is whether the Washington Supreme Court made a finding that Batson v. Kentucky required a showing of racist intent by the prosecutors in order to sustain Mr. SaintCalle's Batson claim, and if so, is its interpretation contrary to or an unreasonable application of Batson to Mr. SaintCalle's case. Our position is that is exactly what they did and that we are now... Weren't they just sort of ruminating about how Batson has just not proved to be all that helpful in foreclosing or preventing discrimination in the striking of potential jurors? No, Your Honor. This was not just ruminations. It permeated the opinions of both the majority and other justices that wrote on this issue. Aren't we just concerned with the majority opinion? Well, we are to an extent. I'll talk about the majority, but I also think it's important to talk about the dissent here and what they said and what the majority did not object to. First, at a broad level, some of the descriptions that were made about the Batson decision, first from the dissent, Batson is a great symbolic step. Sadly, it remains primarily symbolic. Batson was doomed from the beginning. Echoing... That's from the dissent? That's from the dissent. Again, why should we care in this case what the dissent said? Well, the point I'm making, Your Honor, is all of the justices appeared to be agreed on one point, that Batson was an ineffectual tool. The majority said, and if the Court recalls, in Batson, the Court said that its decision in Swain, which required a systematic evidence of systematic purposeful discrimination, was not working. It put a crippling burden on the ability to address the equal protection and due process issues that were inherent in race discrimination. I understand your argument, but I'll just tell you for whatever use it is for you, I'm not personally going to give any weight to language in the dissent. Okay, I'll move on from the dissent. What I'm interested in is what did the majority opinion say that you think supports your view that it was requiring racism because the majority is not required to respond to anything in the dissent? That's correct, Your Honor. And the dissent was on a different point. But the majority is, it's in the majority opinion where they talked about Batson creating a crippling burden. They were referring to Batson, not to Swain. And then they went on to describe what, in their view, Batson required. And this is where they went wrong. Batson, they said, requires judges to accuse attorneys of deceit and racism in order to sustain a Batson challenge. And if I may just digress a moment. Well, I mean, as I understood that, they're just saying, you know, when you're a trial judge and you're ruling on a Batson motion, and if you're going to sustain it, you have to look the prosecutor in the eye and say, you just engaged in, you know, you just used an improper motive to strike that juror. Your Honor, I — And you have to look the — you have to look the lawyer right in the face and tell him that. And they're just saying, you know, that your judges don't like to do that. Of course. But that's much different than calling a prosecutor a racist or calling them a liar. And then — and what they're saying is that to sustain a Batson challenge, you have to call the prosecutor a racist or a liar. And I — what I'd like to draw your Court's attention to is a decision from a Federal judge that we cite in our brief, footnote 1, reply brief, page 3, the Valentine decision. Federal judge doing a 2254 review of a Batson claim. Very similar circumstances of what's occurring in the trial court. And in that case, the trial court remarked that Batson is always difficult because it suggests that one attorney believes the other and has to decide whether the attorney is a racist. Again, I have the same problem with that as with you relying on a dissent. The only thing for us to look at, though the most important thing, is what was the reasoning of the State Supreme Court. I'm just speaking as one judge, not as the panel. But that's — that's how I'm looking at it. No, I agree with that, Your Honor. And I'm going to talk more as we've laid it out in our briefing as to what the basis is from the St. Callie opinion. But the analysis in this Valentine opinion, it says the Batson test is quite different. It requires the courts to determine whether a juror has been struck because of her race and has nothing whatsoever to do with whether a prosecutor harbors racist tendencies. The trial court statements, and I think this is critical, even if an offhand observation implies a reluctance to question the prosecutor's motives — motivation and concomitantly his intent. From there, the district court granted relief or ordered a hearing, a retrospective hearing on the Batson claim. Going back to St. Callie, in the St. Callie decision, the court spent an inordinate amount of time talking about the concepts of implied, implicit, unconscious, and institutional racism. The word racism is mentioned throughout the majority opinion. If one reads the Batson opinion, the majority opinion never uses the term racism or racist. The majority opinion in St. Callie does, consistent with its view that in order to sustain a Batson challenge and its explanation of why 40 cases before it had never sustained an appellate Batson challenge, that it required a judge to make a finding that the attorney was acting in a racist way, not with simply purposeful discrimination. An attorney — Counsel, let me just ask you this. One way to read what the court was saying is to say that it was unhappy with the stringency of the conscious discrimination requirement, and it was pondering whether to impose relief when there was some sort of unconscious bias. Your Honor, I would respectfully suggest that unconscious bias, in fact, and implicit bias is inconsistent with Batson. Batson requires purposeful discrimination, and you could have a lawyer that has all the implicit, unconscious biases in the world, and if that lawyer exercises a challenge — But I don't disagree with you, Counsel. There's no Batson basis for it. I don't disagree with you on that, but it's hard to infer from the court's statements about that, that the court is saying there has to be racism. Your Honor, the — so, you know, when I looked at this opinion and read it, you know, I thought it was interesting, all the comments by the justices, the various justices, on how they view — how Batson is played out. But in the end, when they get to the last section of their opinion, they say — you know, after they say they're not going to make any changes to any rule that was not properly raised, they're not going to do anything — they say, we apply Batson to this case and conclude that the trial court's finding that there was no purposeful discrimination was not clear air. Well — So despite everything you say about what they were discussing and all the various opinions, in the end, they knew — they know what Batson says, and didn't they apply it here? No. They used the words purposeful discrimination. But the key is, how are they interpreting purposeful discrimination? They're using the word discrimination synonymously with the words racism or racist intent. Well, but — Perhaps I can give a hypothetical. I'm representing a police officer charged with an assault on a black Mexican-American. Based on the research I've done and the literature, based on my experiences with African-Americans, with minority members, and their experiences with police and the justice system, I know that they're generally going to be more skeptical of police officer testimony. This is not merely a stereotype. Or maybe even I've hired a jury consultant who said, you know, this is one factor that you should heavily consider in your strikes. And the judge asked me, well, did race play a part in your — you know, and this — these questions were never asked of these prosecutors here. And the judge asked me, did race play any part in your decision? I would say yes. The judge says, are you a racist? I'm not a racist. I'm making a logical, race-based determination — I understand your argument. I understand where you're coming from when you read the opinion. But in the end, it does look like they're aware of Batson and they're applying Batson. But let me ask you this. Well, I don't want to argue with you, because let's assume that they did apply Batson, as we understand it, purposeful discrimination. Do you lose? Well, then, Your Honor, then I think we — I mean, does your whole argument turn on whether or not it was — the court's opinion was contrary to Batson, and therefore it's — you get independent opinion from us? Whether it's — if it's under D-1, if it's contrary to or an unreasonable application of Batson — Well, how about D-2, unreasonable determination of the facts? Because ultimately, the determination of whether or not there was purposeful discrimination is a factual finding. So here, the court — as I understand what the trial court said, was the concern about this possible juror was — offered by the prosecutor was that she may not last throughout the whole trial, given what had happened. Yes. And the — that's what the trial court found, and said it was a nondiscriminatory reason or a neutral reason. And the Washington Supreme Court said, yeah, we agree, that factual finding is supported by the record. So let me ask — so my question to you is, if that's what we end up having to look at, what's your argument? Why is that — Well, you're — Why is that an unreasonable determination of the facts on this record? If it's a — if I'm in D-2, I have a higher amount to climb. I mean, it's — then it's review of the trial judge by clear error and a review of the Supreme Court under the unreasonable determination of the facts standard. That's a high standard. I think on the facts of this case, compared to the Snyder case, I believe we have established enough for the court to make that finding. And in Snyder, the Supreme Court was reviewing that Batson challenge not under an AEDPA standard under D-2, but they were reviewing it under a clear error standard. And yet they found that the challenge or the grant of a peremptory challenge or the denial of a Batson challenge to a single juror was enough to create a Batson challenge. Justice Alito, writing for the majority of the court in that case, focused on — first of all, focused on one issue. In Justice Alito's opinion, he said that you're limited, as a reviewing court, to what the trial court actually found or sustained as the reason proffered by the prosecutor. In our case, we're limited to one point, which is the prosecutor — because the judge said he wasn't going to consider the demeanor of the witness. He considered only this thing about possibly losing the juror. I respectfully suggest — and I think one of the parts of the Batson test, if you look at, I think, footnote 20, citing to a Second Circuit opinion, that the proffered reason — I think this can be factored in, too — has to be a legitimate reason. Counsel, I'm sorry to interject, but you're three minutes over your full time. I know. And I thought you wanted to do some rebuttal. And so, although you're absolutely correct to be answering Judge Paius's questions, I think we have to bring this argument to a close. Thank you, Your Honor. But I'm going to — even though your time's up, for planning purposes, I'll give you one minute for rebuttal. Thank you, Your Honor. If you want to say something after the government speaks. Counsel, I'll give you an extra minute if you need it, too. Thank you, Your Honor. May it please the Court, John Sampson, Assistant Attorney General for the Respondent Appellee. As Your Honors have recognized, the State Supreme Court here, after a lengthy discussion about the concerns with Batson and whether it truly resolved issues of discrimination in jury selection, did, in the end, apply the Batson rule to this case. On Excerpts Record 67, Justice Wiggins, in the lead opinion, said, quote, Instead, we apply Batson to this case and conclude that the trial judge's finding that there was no purposeful discrimination was not clear error. In a concurring opinion by Justice Stevens, she said, at pages 82 to 83 of the Excerpts Record, quote, First, the rule announced in Batson is narrow, placing a constitutional limit on the exercise of peremptory challenges based on a finding of purposeful discrimination. And Justice Madsen, in the third concurring opinion, also applied the Batson decision at Excerpts Record 77 and found no error. The Court discussed at length its concerns that Batson did not go far enough in curbing discrimination in jury selection. And the Supreme Court, since this case, has established a rule that essentially prohibits the striking of a juror of color if an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge. And the Court no longer requires, under state law, a showing of purposeful discrimination. But in this case... They grounded that on the Washington Constitution, right? Yes, Your Honor. And they established General Rule 37, which applies in both civil and criminal cases. So the Court was concerned with discrimination, both expressed discrimination and implicit biases. And the Court knew that that was a concern, because even if somebody is not a racist, or they may still have, just by the fact of the way they are raised, by what their experiences are in life, they will have implicit biases that affect their decisions. And the Court was concerned that that would carry over into jury selection. So that's what they were discussing, and why there may be a need. Justice Gonzales, in fact, in his opinion, wanted to eliminate peremptories altogether. But the... Let's just assume for a while, or a bit, that the Washington Supreme Court in its decision was expressing its frustrations and concerns with Batson. But in the end, it applied Batson's purposeful discrimination standard. And the question now on habeas review is whether under 2254 D2, there was an unreasonable determination of the facts by the trial court and the Washington Supreme Court, when they concluded that the explanation, the reason why he struck the juror, he offered two, but the trial court only went with one, which was that, given the circumstances of juror number 34, loss of her friend, the murder and whatnot, and her concern, some of the things she said, that the prosecutor was concerned that she would not last throughout the trial. Right? Yes, sir. And the trial court accepted that, and so did the Washington Supreme Court. Yes, sir. As a nondiscriminatory reason. Is that a reasonable determination of the facts in light of other issues that were brought out with her? For example, the whole business about questioning her centered on the fact that she was concerned about the court, the prosecutor noted that his concern stemmed from the race of the victim that was her buddy, was her friend, who was an African-American fellow, and that kind of like generated the whole discussion. They asked a ton of questions of her, far more than they asked of the other prospective jurors. Right? Yes, Your Honor. They had alternate jurors. They were hired. They had retained. The court had selected two alternate jurors, and there were other jurors who had similar concerns in the court, yet the court said, you know, they were seated on the jury. So, in light of those, is this really a reasonable determination of the facts in light of those other facts that were involved here? Yes, Your Honor, it was. And the burden on the petitioner, not to quibble with words, it's not whether it's reasonable but whether it's unreasonable for the court to reach this decision. As Justice Scalia pointed out in an argument that I had, the question, we accept too strong a burden if we have to prove the state court decision is reasonable. It's really, was it unreasonable? And that question is, would no fair-minded justice find that the court can reach this conclusion? And I would submit that in this particular case, those are concerns that there was discussions of race in the first place. But the... It was the prosecutor, I think, who raised it by pointing to the race of the victim of her friend. Right? Yes, Your Honor. And actually, what had happened was the prosecutor was asking another juror some questions, and that juror commented how everyone on the panel was white, and then Juror 34 pointed out, well, not everyone, because she was African-American. So the fact that there was even a discussion on race could be troubling. But if you look at the juror's actual words, Juror 34's words, she said that her friend had just been murdered within two weeks, and that it was very emotional for her. She started on Excerpts of Record 256, talking about how she was wondering if she could go through this. She thinks she could be fair and listen, but she doesn't know. She had never been on a murder trial, and had just lost a friend two weeks earlier. Then the next day, on Excerpts of Record 324, she said she thought about it, and she thinks she could be fair, and that she actually had a duty to be on the jury. But then the very next page, on 325, she again repeats her concerns that she's just not sure that she could follow through. Didn't she even say she did not want to participate? Yes, she did, Your Honor. Which isn't a basis for excluding her, perhaps, but it shows how upset she was about the friend's death. Yes, Your Honor. The fact that a person does not want to participate is not alone enough, but if she doesn't want to participate because her friend had just been murdered, and she didn't want to have to review a bloody crime scene or autopsy photos, because that could trigger stress in her, the trial judge, in viewing her answers and viewing her demeanor, recognized that that was a legitimate basis to exclude her, a race-neutral basis to exclude her as a juror. Under Supreme Court precedent, there are two parts of demeanor that are important. There's the demeanor of the... Let me ask you this. So the prosecutor says, well, I'm concerned that she may not last through the trial. What is that really getting at? I mean, there were alternate jurors. There were two alternate jurors, correct? Yes, Your Honor. I think the concern was not that she would stop... His concern was that she wouldn't even make it to jury selection, I mean, to jury deliberations. Well, I think there are two ways to read that. One is... When the photographs were presented. Right, Your Honor. One would be that she would want to be excused before jury deliberations. The other is that she would remain on the juror, not pay full attention to the evidence being presented, go to deliberations, and then not fully participate in deliberations because she had checked out. That's not what the prosecutor said. That's not what the prosecutor said, but that's a reasonable interpretation of what the judge was saying. And that's a concern, is that you may have a juror who simply, as the prosecutor said, she had closed her eyes, and when asked the question, do you know any friends or family who are a victim of violent crime, she did not respond. Now one reasonable interpretation is she didn't respond because she had already talked about it at length. The other interpretation was she was not paying attention because she had checked out. But again, the question is, could a fair-minded jurist reach the decision that the state Supreme Court reached? And I would say that it could. There was one other factor that I forgot to mention when I raised this question with you, which was, wasn't there another juror, a Mexican-American juror, that the state tried to strike and the judge said no? The judge did say no. How does that factor into this? It is evidence that could be used to show that the strike on Juror 34 was not race-neutral, but as the state Supreme Court recognized, it is not, it's only evidence. It doesn't necessarily mean that it was discriminatory to excuse Juror 34. As Justice Wiggins, in his opinion, and I believe Justice Gonzales, in his opinion, recognized that that fact is a piece of evidence the court should consider, but it doesn't necessarily mean that this was a discriminatory, a peremptory challenge. So it's part of the totality of the circumstances that the court should consider in deciding whether there was some conscious discrimination? Yes, Your Honor. Yes, Your Honor. It's part of all of her questions, all of her answers, all the observations. It is one factor that the court considers, but it is not necessarily a dispositive factor. Does the Batson standard require intentional discrimination or is it conscious discrimination? Your Honor, the Supreme Court hasn't really clarified exactly the parameters. I think that certainly intentional discrimination is included within it. Whether or not implicit discrimination, I think that could also be included within it because if you're making a choice to strike a juror based on their race, even if you're only doing it implicitly, that could fall under Batson. But again, the Supreme Court hasn't really fully defined that. And so to say that the state court decision here was an unreasonable application of the Supreme Court precedent when the Supreme Court itself has not determined exactly what purpose bull discrimination entails, I would say it's not sufficient to cover the burden posed by 2254 D2 or D1. Unless the court has further questions, I would ask that the court affirm the district court. I am non-judge biased. No. Thank you, Your Honor. Of course I am. Counsel? Thank you, Your Honor. The judge's findings or lack of findings are important under Snyder. In this case, the trial judge, in denying the challenge for cause to juror number 34, rejected the claim that it was a basis for cause to excuse her because she might not make it to the end of the trial. So what we're left with is whether that is a reasonable, a legitimate basis for a challenge for cause, for a peremptory challenge by the prosecutor. But wasn't the next question whether it was a race-neutral reason when you get to Batson? It has to be. It's supposed to be a race-neutral reason, but also the peremptory challenge, if in footnote 20 of Batson, where they cite to the Second Circuit, the word legitimate is used as in one way to judge this. It's very analogous to Snyder, where the prosecutor is saying, hey, I've got this young college student who may be in a hurry to get back to his classes, and he'll acquit on first And that was the analysis, and I would urge the court to look at Snyder, and I see I'm out of time. Great. Thank you very much. We appreciate the vigorous arguments from both sides of this case, and that St. Kelly case shall be submitted with our thanks to counsel.
judges: Gould, Paez, Pregerson